UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                 )
ROXANNE K. SYMKO                                 )
                                                 )
                 Plaintiff,                      )
                                                 )
        v.                                       )   Civil Action No. 04-1434 (RWR)
                                                 )
JOHN E. POTTER, in his official capacity         )
as POSTMASTER GENERAL of the                     )
UNITED STATES                                    )
                         Defendant.              )
_____)

MEMORANDUM OPINION

        In this Title VII case, the plaintiff, Roxanne K. Symko, alleges that her former employer, the

United States Postal Service, illegally discriminated against her on the basis of sex and in retaliation

for prior complaints, resulting in her losing her job in May 2002.  The defendant has moved to

dismiss or, in the alternative for summary judgment, on the ground that the plaintiff failed to timely

exhaust administrative remedies.[1]  For the reasons stated herein, an accompanying Order denies the

defendant's motion to dismiss.

## I. BACKGROUND

**A.      Facts**

        Symko began working for the United States Postal Service on June 25, 1983.  On June 30,

2001, she was involuntarily reassigned from her position as  Manager, Advertising and Promotion

(which she had held since August 1997) to the position of Manager, Special Projects, New Business

Design.  Record at 80.  As a result of the transfer, neither Symko's salary nor grade changed, but the

_____

        [1]On May 18, 2006, Judge Richard W. Roberts transferred this motion to the
undersigned.

salary ceiling for her new job was $105,749, instead of $121,000.

1.      **Agency Proceedings (Part I)**

On August 14, 2001, Symko sought counseling through the Equal Employment Opportunity

Office within the Postal Service.[2]  Record at 206.  On the "Information for Precomplaint

Counseling" form that Symko submitted, she alleged that her June 2001 transfer was an "adverse

action" because it was an "intentional effort to remove me from the USPS by placing me in a

vulnerable competitive area likely to be dissolved with restructuring" and because it placed her in a

position with a lower salary ceiling, impacting her eligibility for future merit increases and other

associated benefits.  *Id*. at 207.  She alleged that the transfer was discriminatory because it was

based on her sex, her age, and/or in retaliation for prior Equal Employment Opportunity activity in

1994, and asked that she be reassigned to a position equal to the one she had previously held.

By letter dated November 30, 2001, the EEO counselor at the Postal Service assigned to

Symko's case, Sylvia Exum, informed Symko that the Postal Service had declined to resolve her

informal complaint and, therefore, that she "ha[d] the right to file a formal complaint."  *Id*. at 199.

Exum's letter included Postal Service Form 2579-A, "Notice of Right to File Individual

Complaint," for Symko to sign and return.  It also included a blank Postal Service Form 2565,

"Formal Complaint of Discrimination" for Symko to fill out if she chose to file a formal complaint.

The letter advised Symko that:

> [y]our formal complaint must be filed (Postmarked) within fifteen (15) calendar days
> of your receipt of this notice to the following address:
>
>> U.S. Postal Service
>> Office of Compliance and Appeals

---

[2]Such pre-complaint counseling is required by the Equal Employment Opportunity
Commissions' regulations.  *See* 29 C.F.R. § 1614.105(a)(1).

475 L'Enfant Plaza SW, Room 9431
Washington, DC 20260-4135

Exum's letter concluded, "If I can be of further assistance, please feel free to call." *Id*. The letter

did not include a citation to the regulation that set forth the 15-day time limit for filing a formal

complaint, *see* 29 C.F.R. § 1614.106(b), nor inform Symko that although the time limits were

"subject to waiver, estoppel and equitable tolling," there were no other bases for extending the time

allotted, *see* 29 C.F.R. § 1614.604(c). Symko received Exum's letter and the attached forms on

December 14, 2001, making her formal complaint due on December 29, 2001.

On December 29, 2001, proceeding *pro se*, Symko sent a letter to Exum, via certified mail,

which stated:

> I am in receipt of your memorandum denying resolution of matters cited in the
> above referenced case and wish to inform you, within the required 15-day timeframe,
> of my intent to proceed with a formal complaint. However to allow for holiday
> travel, this [letter] requests a 10-day extension for filing of required formal
> documents.

Record at 193. This letter was addressed to:

> Sylvia Exum
> U.S. Postal Service
> Office of Compliance and Appeals
> 475 L'Enfant Plaza, SW, Room 9431
> Washington, DC 20260-4135

For reasons that are not entirely clear from the record, the Postal Service did not receive Symko's

letter until January 17, 2002. In the meantime, on January 8, 2002, Symko, still proceeding *pro se*,

filed her Formal Complaint with the Postal Service's Office of Compliance and Appeals. Her

complaint alleged that her reassignment had been "orchestrated to place a white male into my

position," and with knowledge that the organization to which Symko was transferred would be

eliminated in the near future due to a reduction in force and that, if that happened, Symko would

3

have no right to placement in her prior organization.  Record at 187.   She alleged discrimination on the basis of sex and retaliation for prior EEO activity.  After filing her complaint, Symko retained an attorney to represent her.  Record at 192.

Section 1614.107(a) of the Equal Employment Opportunity Commission Regulations "sets out the circumstances under which an agency may dismiss a complaint."  EEO MD-110.  It provides, in relevant part:

§ 1614.107  Dismissals of complaints.

 (a) *Prior to a request for a hearing in a case*, the agency shall dismiss an entire complaint:

> . . .

> (2) That fails to comply with the applicable time limits contained in §§ 1614.105, 1614.106 and 1614.204(c), unless the agency extends the time limits in accordance with § 1614.604(c), or that raises a matter that has not been brought to the attention of a Counselor and is not like or related to a matter that has been brought to the attention of a Counselor;

§ 1614.107(a) (2) (emphasis added).  EEO MD-110 provides that "An agency's authority to dismiss a complaint ends when a complainant requests a hearing."  (emphasis added).  It further provides that: "An agency should process dismissals expeditiously."  *Id*.

Neither Symko nor her attorney ever received any response from the Postal Service to her December 29, 2001 letter requesting an additional 10 days for filing her complaint – no acknowledgment of its receipt, no request for additional information to support her request for additional time, and no response to her request for additional time.  Nor did the agency, although it was empowered to do so, dismiss her complaint at that time.

On February 25, 2002, the Postal Service, notified Symko that her complaint had been "accepted for investigation."  Record at 181-183.  Nowhere in the three page letter setting forth

Symko's rights and responsibilities did the Service note that Symko's complaint had been filed after the December 29, 2001 deadline, mention Symko's December 29, 2001 letter requesting an additional 10 days to file her complaint, or indicate that although it was accepting the complaint for investigation it reserved the right to deem it untimely filed. The Service defined the issue for investigation as "You were reassigned from the position of Manager, Advertising, PCES-1 and reassigned to a temporary organization." Record at 181.

On February 26, 2002, the Postal Service sent a "General Notice of Reduction-in-Force" to all career employees in the Future Business Design area" (which included Symko). The Notice stated:

> This is an advance informational notice to advise you that a reduction-in-force (RIF) within your competitive area is necessary as a result of the closing of the Future Business Design organization. The effective date of the RIF is May 31, 2002.
>
> . . .
>
> Since this is a complete closing . . . there will not be any placement opportunities available within your current competitive area. Under the RIF procedures, employees who are not placed during the RIF avoidance process will be subject to separation.
>
> Prior to the issuance of specific RIF notices, every effort will be made to minimize the impact.

Record at 83.

On March 27, 2002, the Postal Service sent a "Specific Notice" to Symko stating that "a reduction in force is being conducted within the FUTURE BUSINESS DESIGNS competitive area" "due to the decision to eliminate the Future Business Designs department as a separate function." Record at 84. That notice stated that as a result of this reduction in force, Symko would "be released from [her] position . . . and . . . separated from the U.S. Postal Service effective close of business May 31, 2002." *Id*. The letter also stated: "No offer of placement can be made at this time

5

because all positions in this competitive area will be abolished." *Id*.

On May 17, 2002, Symko's attorney sent a letter asking the EEO Complaints Processing Unit to modify the previously accepted issue to read:

> Because of your gender (female) and reprisal, you were reassigned from the position of Manager, Advertising, PCES-1, to a temporary position which has subsequently been abolished, resulting in your separation by reduction in force effective May 31, 2002.

Record at 179-180.  Symko ceased working for the Postal Service on May 31, 2002; her formal separation was effective June 28, 2002.

On December 18, 2002, the investigator assigned to Symko's case filed his report with the Postal Service.  Record at 01-02.  On February 10, 2003, the Postal Service notified Symko that "the Postal Service has completed the investigation of your formal complaint of discrimination," and sent her a copy of the investigator's report.  The Service informed Symko that at that point she had three options: (1) to request a hearing before an Administrative Judge appointed by the Equal Employment Opportunity Commission; (2) to request a final agency decision without a hearing; or (3) to withdraw her complaint.  Symko requested a hearing before an Administrative Judge appointed by the Commission.

### 2.    Commission Proceedings

On May 22, 2003, the Administrative Judge assigned to Symko's case by the Commission issued an order "acknowledg[ing] receipt of the complainant's request for a hearing."  That order also stated that the parties had thirty days to identify any claims that the agency had dismissed during the agency investigative process, pursuant to 29 C.F.R. § 1614.107(a).  However, at that time the agency had not dismissed any claims pursuant to section 1614.107(a).

On August 5 ,2003, the EEOC proceeding was stayed to allow the parties to complete an

alternative dispute resolution process.  Then, on February 17, 2004, Symko withdrew her request

for an EEOC hearing, stating that she intended to "pursue her claims in federal court."  As a result,

on February 23, 2004, the EEOC Administrative Judge dismissed Symko's EEOC case and

returned jurisdiction to the Postal Service.

> **3.     Agency's Proceedings (Part II)**

On May 24, 2004, the Postal Service issued its final decision.  Raising the issue for the first

time since Symko's formal complaint was filed almost two and ½ years earlier, the Service

dismissed Symko's complaint as untimely because it was filed on January 8, 2002, more than 15

days after she had received notice of her right to file a formal complaint.  Acknowledging for the

first time Symko's December 29, 2001 certified letter requesting an additional 10 days to file her

formal complaint, the Postal Service ruled that Symko was not entitled to additional time because

(1) "Ms. Exum never approved your request for an extension"; (2) "[e]ven if she had wanted to

approve your request, she lacked authority to grant such a waiver" and (3) although the doctrines of

"waiver, estoppel and equitable tolling applied," 29 C.F.R. § 1614.604(c), Symko's stated excuse –

"to allow for holiday travel" – did not support their application.  The Postal Service also ruled that

Symko's stated intent to file a formal complaint in her December 29, 2001 letter requesting

additional time did not by itself meet the requirements for filing a formal complaint.  In the

alternative, the Postal Service ruled that on the merits it found no discrimination.

**B.     Procedural History**

On August 25, 2004, Symko filed a complaint in federal district court against Potter, in his

capacity as Postmaster General, alleging that the Postal Service discriminated against her because of

her sex and in reprisal for her prior EEO activity when "her position was abolished . . . and she was

separated from her employment in May 2002" in violation of Title VII of the Civil Rights Act of

1964.

On December 20, 2004, the defendant filed a motion to dismiss or, in the alternative, for summary judgment on the ground that Symko failed to timely exhaust her administrative remedies.

## II. DISCUSSION

The EEOC's regulations require that if an employee's complaint is not resolved through informal counseling, the employee must file any formal complaint within 15 days of receiving notice from the agency of the right to file a formal complaint.  29 C.F.R. § 1614.106(b).  "[C]omplainants must timely exhaust these administrative remedies before bringing their claims to court."  *See, e.g., Bowden v. United States*, 106 F.3d 433 (D.C. Cir. 1997) (citing *Brown v. GSA,* 425 U.S. 820, 832-33 (1976)).  However, "the administrative time limits created by the EEOC erect no jurisdictional bars to bringing suit."  *Id.*  Instead, "functioning like statutes of limitations, these time limits are subject to equitable tolling, estoppel, and waiver."  *Id.*

In seeking to dismiss Symko's pending complaint, the defendant argues that she failed to timely exhaust her administrative remedies because (1) her formal complaint was due on December 29, 2001, but not filed until January 8, 2002, and (2) no equitable doctrine excuses her failure to comply with the December 29, 2001 deadline.  Conceding that the formal complaint she filed on January 8, 2002, was not filed within 15 days of her receiving notice of her right to file a formal complaint, Symko argues that either (1) her December 29, 2001 letter, which was filed within the 15-day time limit, should be treated as the "equivalent" of a formal complaint; or (2) that her complaint should be deemed timely filed under the doctrines of equitable tolling, estoppel or waiver.  In the alternative, Symko argues that even if her initial "reassignment" claim is dismissed as untimely, her termination claim is a separate and distinct claim to which the failure to timely exhaust does not apply.

8

**A.      Was Symko's December 29, 2001 Letter the Equivalent of a "Formal Complaint"?**

A person need not fill out a specific form to meet the requirement of filing a formal

complaint, but the complaint must contain the following information:

> [A] signed statement from the person claiming to be aggrieved or that person's
> attorney.  This statement must be sufficiently precise to identify the aggrieved
> individual and the agency and to describe generally the actions(s) or practice(s) that
> form the basis of the complaint.  The complaint must also contain a telephone
> number and address where the complainant or the representative can be contacted.

29 C.F.R. § 1614.106(c).  Symko argues that her December 29, 2001 letter, although it fails to

meet the literal requirements of the regulations, should be treated as the "equivalent" of a formal

complaint because (a) she sent the letter on the day that the formal complaint was due; (b) the letter

stated that she intended to file a formal complaint but needed an additional 10 days to do so because

of "holiday travel"; (c) the defendant never responded to her request for additional time; (d) the

defendant accepted her complaint for investigation and never again mentioned the timeliness issue

until it dismissed the complaint more than two years later; (e) at the time, Symko was proceeding

without the benefit of counsel; and (f) she filed her formal complaint, as promised, within the next

ten days (on January 8, 2002).  In support she relies primarily on two cases which, she contends,

stand for the proposition that a letter stating an intent to file a formal complaint is sufficient to

comply with the regulatory time limits.  *See Pitts v. Department of the Navy*, EEOC No.

01991724, slip op. at 4 (Sept. 3, 1999) (1999 EEOPUB LEXIS 4930) and *Brescia v. Postal

Service*, EEOC No. 01983640, slip op. at 5-6 (June 7, 1999) (1999 EEOPUB LEXIS 3060).  As

explained below, however, neither case stands for the proposition that merely stating the intent to file

a formal complaint satisfies the regulatory requirements.

In *Pitts*, the issue was whether the complainant had made contact with an EEO counselor

within 45 days of the allegedly discriminatory action, as required by 29 C.F.R. § 1614.107(b), not

whether the requirements for filing a formal complaint had been satisfied.  The complainant in *Pitts* had signed a memorandum accepting her position's change to a lower grade, noting on it that she intended to file an EEO complaint.  The EEO Office received a copy of that memorandum within the 45-day time limit.  The EEOC held that the complainant had therefore satisfied the 45-day requirement to "make contact."  However, a holding that stating an intent to file satisfies the "make contact" requirement is not persuasive authority for Symko's proposition that stating an intent to file satisfies the filing a formal complaint requirement.

In *Brescia*, after the time for the agency to respond to the employee's request for counseling had passed, the employee sent a letter to the agency requesting that the agency "consider this my formal EEO complaint."  Attached to the letter was "a copy of the employee's pre-complaint counseling form which identified the aggrieved and the agency, and described the actions that formed the basis of his complaint."  A few days later, the agency sent the employee a blank formal complaint form, requesting that it be filled out.  Included with the blank form was a notice that the employee had fifteen days from the receipt of the notice to file a formal complaint.  More than 15 days later, the employee returned the form, but noted that she had already filed her formal complaint.  The agency ruled that the employee's pre-notice letter did not count as a formal complaint and, therefore, that her formal complaint was untimely filed.  The EEOC reversed, holding that the pre-notice letter satisfied the requirements for filing a formal complaint because the employee "submitted a written, signed statement manifesting his intent to file a formal complaint" and "attached a copy of his pre-complaint counseling form, which identified the aggrieved and the agency, and described the actions that formed the basis of his complaint."  Although *Brescia*'s facts more closely resemble the instant case, there are critical differences.  Namely, in *Brescia*, the EEOC found the employee's pre-notice letter adequate to satisfy the requirements for filing a formal

complaint not simply because it indicated that the employee's "intent" to file a formal complaint, but also because it, unlike Symko's December 29, 2001 letter, included in an attachment all of the substantive information required by the regulations.

Accordingly, the plaintiff has cited no persuasive authority for the proposition that merely stating an intent to file a formal complaint is the equivalent of filing of a formal complaint. As for the other circumstances cited by the plaintiff, while they highlight the harshness of this conclusion in this particular case, they do not offer a legal basis for concluding that the Postal Service erred in refusing to treat Symko's December 29, 2001 letter as the equivalent of filing a formal complaint.

**B.    Does Equity Require that Symko's January 8, 2002 Formal Complaint Be Deemed Timely Filed?**

Whether or not to excuse a failure to meet administrative time limits is a question to be decided by the court independently of any administrative finding on the matter. *See Smith-Haynie v. District of Columbia*, 155 F.3d 575, 579 (D.C. Cir.1998); *Johnson v. Billington*, 404 F. Supp.2d 157, 162 (D.D.C. 2005) ("Application of the doctrine of equitable tolling is solely within the judge's discretion."). In deciding whether the doctrines of waiver, estoppel and equitable tolling apply, "[t]he existence of such excusing circumstances should be considered in light of the purpose of the doctrine of exhaustion of administrative remedies" because:

> exhaustion is not an end in itself; it is a practical and pragmatic doctrine that 'must be tailored to fit the peculiarities of the administrative system Congress has created.' Exhaustion under Title VII, like other procedural devices, should never be allowed to become so formidable a demand that it obscures the clear congressional purpose of rooting out ... every vestige of employment discrimination within the federal government.

*Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985) (internal quotations omitted). Thus, while "[e]xhaustion is required in order to give federal agencies an opportunity to handle matters

11

internally whenever possible and to ensure that the federal courts are burdened only when

reasonably necessary," Congress "never, however, wanted the exhaustion doctrine to become a

massive procedural roadblock to access to the courts." *Id.* Rather, "Congress contemplated that the

exhaustion doctrine would be held within limits consonant with the realities of the statutory

scheme." *Id.* "'[J]udges slight the legislature's central command if they fail to recall that Title VII

was devised as a measure that would be kept accessible to individuals untrained in negotiating

procedural labyrinths.'" *Id.* (quoting *Loe v. Heckler*, 768 F.2d 409, 417 (D.C. Cir.1985)).

"[A]dequacy of notice is the core of Title VII's administrative exhaustion requirements" and "'the

strictures of common law pleading have no place in a scheme largely dependent upon self-service in

drawing up administrative charges.'" *Id.* (quoting *Loe*, 768 F.2d at 420).  The ultimate issue for a

court is simply  "whether equity requires extending a limitations period." *Smith-Haynie v. District*

*of Columbia*, 155 F.3d 575, 579 (D.C. Cir. 1998).

In *Brown*, the court concluded that it was "amply evident that in the rather unusual

circumstances of this case, the purpose of the [exhaustion] doctrine was satisfied even if the letter

was not." *Brown*, 777 F.2d at 14.   The Court reaches the same conclusion in the instant case.

A plaintiff must establish that he or she "acted diligently to preserve [the] claim." *Wilkins v.*

*Daley*, 49 F. Supp. 2d at 2.  Symko was diligent throughout in pursuing her rights.  She did not

simply file late and then ask her untimeliness to be excused.  Rather, she sent a letter on the date her

formal complaint was due specifically stating her intent to file a formal complaint and seeking a

mere additional 10 days to do so.  She addressed the letter to her EEO Counselor at the same address

she was given for filing her formal complaint.  Neither her EEO Counselor nor anyone else

representing the Postal Service ever acknowledged receiving her letter nor formally responded to her

request for additional time.  Symko proceeded to file her complaint within the additional 10 days she

had requested.  Moreover, during that entire time she was proceeding *pro se*.  "[C]ourts have

excused parties, particularly those acting *pro se*, who make diligent but technically defective efforts

to act within a limitations period." *Bowden*, 106 F.3d at 438.  In light of the brevity of the time

allotted – a mere 15 days – the fact that those 15 days fell during the holiday season, and her *pro se*

status at the time, the Court finds nothing in Symko's conduct that calls her diligence into question.

Moreover, the Postal Service's ability to investigate the merits of Symko's claim was surely

not prejudiced by her 10-day delay in filing her complaint.  As other courts have recognized,

> While the [time limit for notifying an  EEO counselor] serves the conventional
> purpose of a limitations provision, in that it requires the commencement of an action
> within a specified period of time and promotes repose, the fifteen-day requirement
> serves no interest other than the internal agency interest in speedily processing
> discrimination claims

*Royall v. United States Postal Service*, 624 F. Supp. 211 (E.D.N.Y. 1985) (internal citations and

quotations omitted).  In contrast, Symko would be prejudiced by a dismissal now.   Shortly after

filing her formal complaint, and not receiving any indication from the Service that there was an issue

with its timeliness, Symko retained a lawyer, presumably at her own expense, to represent her.  For

the next 2 ½ years, she invested untold amounts of her time and money in her case.  Thus, the

"plaintiff would be substantially prejudiced by dismissal  . . .  at this juncture while defendant would

not be prejudiced at all by consideration of the merits except in the sense that it would lose an

opportunity to rid itself of a troublesome lawsuit."  *See Brown*, 777 F.2d at 16.

In addition, in the present case, "the exhaustion doctrine's purpose (giving the agency notice

of a claim and opportunity to handle it internally) has been amply satisfied."  *Id*. at 15.  And as in

*Brown*, "it would be neither "practical" nor "pragmatic,"  . . .  to dismiss on exhaustion grounds

now.  *Id*.  No purpose reasonably related to the goals of the doctrine would be served by dismissal.
Timely or untimely, the appellant's complaints have  been exhaustively processed at the
administrative level."  *Id*. at 15-16.

Finally, even though the Postal Service had no express regulatory obligation to respond to
Symko's request for additional time, it did have an obligation to "process dismissals expeditiously."
EEO MD-110.  Yet, despite having all the relevant facts at its disposal before it accepted Symko's
complaint for investigation, it completely ignored the issue of timeliness for two and ½ years.  The
Service accepted Symko's complaint for investigation without indicating to her that it believed the
issue of timeliness remained open.  After completing its investigation, the Service advised Symko of
her options, again without indicating that there was any issue as to the timeliness of her complaint.
Initially, Symko opted to pursue a hearing before an Administrative Judge of the EEOC.  (Arguably,
at that point, the agency lost its power to dismiss Symko's complaint for untimeliness.  *See* EEO
MD-110.)   After a failed attempt at mediation and for reasons that are not apparent from the record,
Symko decided to withdraw her request for a hearing before the Administrative Law Judge to
proceed in federal court.  After the case was returned to the Service, the Service issued its final
opinion.  There, for the first time in almost two and ½ years, it mentioned the issue of timeliness,
ruling that Symko's formal complaint was untimely filed.

> It is very well to say that those who deal with the Government should turn square
> corners.  But there is no reason why the square corners should constitute a one-way
> street.

*Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 388 (1947) (Jackson, J., dissenting).   Indeed, it
is arguable that once Symko requested a hearing, the agency lost its power to dismiss her complaint
for untimeliness.  See EEO MD-100.  Although "equitable tolling principles are far from clear."
*Irvin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990), in this instance equity requires

that Symko's formal complaint be deemed timely filed.

**C.      Separability of Termination Claim**

Given the conclusion that Symko's formal complaint be deemed timely filed, it is unnecessary to address Symko's argument that even if her initial complaint was untimely, that complaint only covered her claim that her June 2001 reassignment was discriminatory and not the later "amendment" to add a claim that her termination pursuant to a reduction-in-force was discriminatory.  In any event, Symko's argument is not persuasive. According to the EEOC guidelines, an "amendment" is a new incident of alleged discrimination.  Although the plaintiff's actual separation had not yet taken place when she filed her formal complaint, she anticipated it from the very beginning.  In her first allegation of discrimination, filed on August 14, 2001, she charged that the personnel action "was an intentional effort to remove me from the USPS by placing me in a vulnerable competitive area likely to be dissolved with restructuring."  In addition, in her formal complaint, she described her claim of discrimination as having been reassigned with the effect of placing her in a position that would be abolished – "an orchestrated action, in a worst case scenario, an effort to permanently remove me from US Postal Service employment."  And when her attorney asked for the definition of the issue to be modified he stated, "I believe the separation is included in your use of the phrase 'reassigned to a temporary position," but "in order to resolve any ambiguities, I propose that the accepted issue be modified."  These various documents establish that the plaintiff never "amended" her complaint to include an independent claim of separation but rather simply identified her date of separation as new evidence to support her original claim.  Accordingly, the record does not support Symko's contention that she brought two separable claims.

### III. CONCLUSION

For the foregoing reasons, an accompanying order denies the defendant's motion to dismiss

or, in the alternative, for summary judgment.


                                          /s/

Dated:  August 30, 2007                   Louis F. Oberdorfer
                                          UNITED STATES DISTRICT JUDGE